## 58793. SIEGEL et al. v. CODNER.

McMURRAY, Presiding Judge.

In 1960 Isadore Siegel and Saul Codner purchased real property known as 1038 W. Peachtree Street, N. W., Atlanta, Fulton County, Georgia. In 1969 they borrowed $125,000 from Scott Hudgens Realty & Mortgage Company, Inc., conveying said property to the lender as security (subsequently transferred to the Colonial Life Insurance Company of America).

On October 8, 1971, Codner conveyed his one-half undivided interest to Alvin N. Siegel for the sum of $35,000 secured by a second deed to secure debt in favor of Codner as to the one-half undivided interest therein transferred by and between the parties. In 1975 Alvin N. Siegel conveyed this one-half undivided interest to his mother, Eva Siegel, wife of Isadore Siegel.

On or about June 8, 1978, Alvin N. Siegel, on behalf of Eva D. Siegel, began negotiations with Saul Codner as to an amount necessary to discount and pay off in advance said promissory note and deed to secure debt held by Codner. Alvin N. Siegel contends that as a result of these negotiations Saul Codner finally agreed to accept as full consideration payment of $18,000 for the indebtedness held by him, provided it was to be paid within sixty days. But, thereafter, on June 12, 1978, Alvin N. Siegel received letter communications from Saul Codner's lawyer and Codner, agreeing in writing to accept $18,000 in full payment of the indebtedness, dated October 8, 1971, if paid within 60 days from the date of this letter and upon the following conditions: "1. Delivery to me of the sum of $18,000.00 in cash or cashier's check; 2. Written release to me by the holder of said prior Note and Security Deed releasing me of any and all liabilities under said prior Note and Security Deed; 3. If such written release by

the holder of said prior Note and Security Deed cannot be procured, then the execution and delivery to me in form and substance satisfactory to my attorneys of an Indemnity Agreement and Indemnity Security Deed by the owner(s) of the one-half undivided interest in said property that I conveyed to you by Deed . . . Said Indemnity Security Deed is to be subject only to said prior Security Deed in favor of Scott Hudgens Realty & Mortgage, Inc." This letter agreement of acceptance in response to the prior offer to pay $18,000 in advance in full payment of the note and security deed stated again that if the above conditions are not complied with "within 60 days from date of this letter [June 12, 1978], then my agreement to accept $18,000.00 in full payment . . . shall thereupon be null and void and not enforceable." It is here noted that 60 days from June 12, 1978, would fall on August 11, 1978.

Codner later informed Alvin N. Siegel by letter from his counsel, dated June 26, 1978, that certain payments due the prior security deed holder (Colonial Life Insurance Company of America) had not been made; and Siegel's counteroffer as to the indemnity agreement had been rejected. Codner later admitted he had been informed that the property was under contract of sale and contended Siegel could not agree to secure his release from liability under said note held by Colonial Life Insurance Company of America and that Siegel would be unable to deliver to him the indemnity security deed as set forth in his (Codner's) offer of June 12, 1978.

Alleging, in general, the substance of the above facts, Isadore M. Siegel, Eva D. Siegel, and Alvin N. Siegel as plaintiffs, on July 18, 1978, brought an equitable action against Saul Codner seeking specific performance of the contract whereby defendant agreed to accept $18,000 in full settlement of the indebtedness owed to him by Alvin Siegel and Eva Siegel. Plaintiffs allege that subsequent to June 12, 1978, defendant had his attorney write plaintiffs stating that defendant wanted a payoff of $31,518.09 (a claim of principal in the amount of $29,183.42; interest in the amount of $2,334.69 through June 8, 1978, and interest of $6.39 per day until paid off). They further alleged that they were ready, willing, and

able to pay the $18,000 agreed upon and able to satisfy the additional request by securing defendant's release and indemnification. Plaintiffs further contend they have entered into an agreement to sell said property subject only to the first mortgage indebtedness and that said sale is in danger of being cancelled by purchasers due to said claim being made by the defendant. They also sought to pay into the registry of the court the sum of $31,518.09 and that defendant be required to specifically perform by accepting $18,000 as agreed upon with the balance of said funds paid to them.

Defendant answered, setting forth a number of defenses and denying plaintiffs' claim for specific performance, admitting therein the negotiations and the letter of June 12, 1978, attached to the petition in which he had informed plaintiffs that he would accept the offer to discount the note and security deed. He contended, however, that on June 13, 1978, he had been informed that the plaintiffs would not accept the offer, although a counteroffer had been made to execute in favor of Codner an indemnity agreement. In this letter attached to the defendant's answer the counteroffer had been rejected, and defendant's offer to discount the note withdrawn. He contended the first mortgage was now in default, and the principal balance of the loan held by him and secured by deed was $29,183.42 from July 1, 1977, and he fully expects to be paid in full on the note, and "he will pursue all necessary steps to protect his security." By counterclaim he gave plaintiffs written notice as to the inclusion of 10% attorney fees unless the principal sum and interest "both demanded here, are received . . . within 10 days after receipt of this counterclaim . . ." He therein sought judgment in the amount of $29,183.42 plus interest from July 20, 1977, to date of judgment and attorney fees as set forth in said promissory note.

The Siegels conveyed by warranty deed, filed and recorded on July 26, 1978, the property to Turner Communications Corporation, and the plaintiffs Isadore Siegel and Eva Siegel entered into an escrow agreement under which $36,401.69 was deposited in escrow and $31,818.42 was to be applicable to defendant's note. Sellers were to have 30 days of the date of the said escrow

agreement in which to obtain from the holder of the security deed cancellation and satisfaction of record thereof but if sellers fail to obtain cancellation and satisfaction and the escrow agent was not directed by court order to pay a sum into the registry of the court in exchange for cancellation of the security deed within the said 30 days, the escrow agent was to immediately pay the $31,818.42 to the purchaser.

By amendment, dated August 24, 1978, plaintiffs sought to require the escrow agent to turn over to the court the escrow funds being held in the case in the amount of $31,818.42, and the escrow agent was ordered to be added as an additional defendant in the case. The condition of the escrow agreement was not met, and the funds were returned to the purchaser, Turner Communications Corporation. On August 30, 1978, Turner Communications Corporation paid the defendant Codner the balance due on said note. On September 11, 1978, the escrow agent was dismissed as a defendant. Plaintiffs then amended their complaint showing that there was no equitable relief any longer in the case and sought judgment against the defendant in the amount of $13,518.09 plus interest to date.

After discovery, the defendant moved for summary judgment which was granted, and the plaintiffs appeal. *Held:*

1. The first question for decision is whether or not there was a binding agreement and whether the defendant thereby agreed to accept less than what was owed. Code § 20-1204 (later amended by Ga. L. 1979, pp. 1051, 1052, effective July 1, 1979) provides that an agreement by a creditor to receive less than the amount of his debt cannot be pleaded as an accord and satisfaction "unless it be actually executed by the payment of the money, or the giving of additional security, or the substitution of another debtor, or some other new consideration." We have for decision here whether a new contract or novation had been made. Clearly the parties do not agree as to the substance of any agreement on or about June 12, 1978, whereby the defendant allegedly agreed to accept $18,000 in full payment of the indebtedness. Plaintiffs do admit that they received the June 12, 1978, letter com-

munication which they contend was another agreement accepted by Alvin N. Siegel whereby the defendant added further conditions to the acceptance of the $18,000 in full payment of the indebtedness.

Defendant however contends that on June 26, 1978, there had been no meeting of the minds as to the discount of the note, and having received information of the default from the first mortgage holder, the plaintiffs having advised that the first mortgage was current and not in default, he withdrew the offer to accept the $18,000 in full payment. However, it is noted that this occurred prior to August 11, 1978, as the 60 days would extend to that time.

Plaintiffs first contend there was a verbal agreement to pay $18,000 in 60 days in satisfaction of the indebtedness; and again upon receipt of the letter of June 12, 1978, which became an offer that plaintiffs contend they also accepted and that they were attempting to complete the conditions required therein within a 60-day period when the defendant, on June 26, 1978, withdrew his offer, contending plaintiffs' counteroffer had been rejected by the defendant. Issues of material fact remain for determination by a jury as to whether or not there has ever been a meeting of the minds whereby there was an offer and acceptance to discount the note and security deed. Code § 20-108; *Georgia Southern & F. R. Co. v. Adeeb,* 15 Ga. App. 831 (1) (84 SE 323); *Home Ins. Co. v. Huguley,* 42 Ga. App. 598 (157 SE 391); *Jones v. Ely,* 95 Ga. App. 4 (1) (96 SE2d 536); *State Mutual Ins. Co. v. Strickland,* 218 Ga. 94 (1) (126 SE2d 683); *Mayer v. Turner,* 142 Ga. App. 63 (1) (234 SE2d 853); *Prothro v. Walker,* 202 Ga. 71 (1 (a)) (42 SE2d 114).

Further, existence vel non (or not) of mutual intention is ordinarily a question of fact which is reserved for determination by the jury. *Mayer v. Turner,* 142 Ga. App. 63, 64 (1), supra; Cf. *Smith v. Hornbuckle,* 140 Ga. App. 871, 874 (1) (232 SE2d 149); *Ward v. Venture Industries,* 147 Ga. App. 17, 18 (248 SE2d 7); *State Mutual Ins. Co. v. Strickland,* 218 Ga. 94 (1), 95, supra; *Prothro v. Walker,* 202 Ga. 71 (1), supra.

2. In addition, the issue of whether or not the plaintiffs had in some degree partially executed the agreement by fulfilling the conditions set forth in the

letter offer of June 12, 1978, inasmuch as the 60 days had not expired by June 26, 1978, when the defendant attempted to withdraw his offer remains for decision. It is true the plaintiffs never performed the satisfaction by payment of the lesser sum. But if they partially performed by efforts to satisfy the conditions and had partially performed on or before June 26, 1978, when the defendant attempted to withdraw his offer, if any, the defendant could not withdraw before the 60 days had expired. Even so, in that letter defendant was contending that there had been no meeting of the minds as to an offer and acceptance as to that point in time. However, if there were an offer and acceptance, some valuable consideration may have flowed from the plaintiffs' attempt to satisfy the conditions set forth by the defendant. Consequently, this disputed issue of fact remains for proper determination by the jury. See *Ayer v. First Nat. Bank &c. Co.,* 182 Ga. 765, 767-768 (1, 2) (187 SE 27); *Mayer v. Turner,* 142 Ga. App. 63, 64 (1), supra, and cits.

*Judgment reversed. Banke and Birdsong, JJ., concur.*

ARGUED OCTOBER 30, 1979 — DECIDED JANUARY 8, 1980 — REHEARING DENIED FEBRUARY 13, 1980 — ▮▮▮▮▮▮▮

*Alvin N. Siegel,* for appellant.
*Max Olim,* for appellee.